In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2967

WILLIAM A. MCGOWAN,

*Plaintiff-Appellant,*

*v.*

DEERE & COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 C 4003—**Joe Billy McDade**, *Judge.*

ARGUED MAY 7, 2009—DECIDED SEPTEMBER 11, 2009

Before FLAUM and WILLIAMS, *Circuit Judges,* and
LAWRENCE, *District Judge.*[*]

LAWRENCE, *District Judge.* William A. McGowan filed
this action against his employer, Deere & Company
("Deere"), alleging *inter alia* that Deere discriminated
against him on the basis of race in violation of Title VII of

[*] The Honorable William T. Lawrence, United States District
Judge for the Southern District of Indiana, sitting by designation.

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981 by refusing to reinstate him to his position at Deere and refusing to promote him to other positions that he believes he was entitled to receive by virtue of his seniority. The district court granted summary judgment in favor of Deere on these claims, and McGowan now appeals. For the reasons set forth in this opinion, we affirm the district court's decision.[1]

## I. Background

McGowan is an African-American male. With the exception of a period of time when he was laid off, he has worked continuously at Deere from 1974 to the present. In September 1999, McGowan injured his back and sought treatment from a number of doctors, including Deere's company doctor, Dr. William Candler. McGowan was ultimately diagnosed with a herniated intervertebral disc in his lumbar spine that caused constant pain. He was prescribed pain medication and physical therapy, and it was suggested that he might have to undergo surgery. In March 2000, McGowan returned to work under either a 25-pound or a 35-pound weight restriction,

---

[1] McGowan had also argued below that Deere discriminated against him by failing to give him an income security benefit and that Deere violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Because McGowan does not press either of these arguments on appeal, we limit our discussion to McGowan's refusal to reinstate and refusal to promote arguments.

and his employment records indicate that by July 3, 2001, he was on a permanent 25-pound restriction.

At some point McGowan suffered another injury that, when coupled with his pre-existing pain, led to the decision to undergo back surgery. The surgery was performed in June 2004 by a neurosurgeon, Dr. Giuseppe Lanzino. After the surgery, Dr. Lanzino and his nurse practitioner sent a letter to McGowan's treating physician, Dr. Brian Cady, dated July 31, 2004. In that letter, they indicated that McGowan could return to work with a 50-pound restriction and that after a month he should be able to resume full duty. The nurse practitioner filled out a form with essentially this same information. However, a few days later Dr. Candler informed McGowan that he was still under a 25-pound weight restriction. Dr. Candler claims that he contacted Dr. Lanzino after receiving notice of the 50-pound restriction and that both of them agreed that a 25-pound restriction was more appropriate. There is a note to this effect in Dr. Candler's records, but nothing appears to have been submitted by the parties from Dr. Lanzino's office regarding this conversation.

Thereafter, on October 20, 2004, the nurse practitioner signed another form stating that McGowan could lift up to 80 pounds. Dr. Candler claims that after he received this form, he contacted Dr. Lanzino in early November and that Dr. Lanzino rescinded this form and reiterated his agreement with the 25-pound restriction. There does not appear to be any documentation in either Dr. Candler's or Dr. Lanzino's medical records to support Dr. Candler's claim.

McGowan was eventually sent to Greg Monson, a physical therapist, in June 2005 for a Functional Capacity Evaluation ("FCE"). Monson concluded generally that McGowan could perform "medium-heavy" work and listed very specific weight limitations for different activities. For example, Monson concluded that McGowan could lift 85 pound from floor to waist infrequently 1 to 4 times per day and could lift 25 pounds frequently (33 to 250 repetitions per day) from waist to eye level as a one-hand carry. In addition, Monson wrote a note in August 2006 indicating that an across-the-board restriction of 25 pounds on a frequent basis was appropriate. McGowan's treating physician, Dr. Cady, noted in June 2006 that he saw nothing to contradict the FCE based on his review of McGowan's history of prior back injury and his own examination.

Ultimately, Dr. Candler kept McGowan on a 25-pound restriction. As a result, McGowan remained unable to return to his prior position. Moreover, he was unable to secure two other positions as a sheet fabricator cutting parts with a "CNC laser" for which he was the senior bidder because those two positions required an employee to be able to lift, pull, and push more than 25 pounds. Instead, the Industrial Relations Administrator at Deere awarded the positions to other individuals. McGowan blames Dr. Candler for his failure to receive these positions and believes that Dr. Candler is biased against him. He contends that Dr. Candler's animus is evidenced by the fact that Dr. Candler was upset that McGowan received a settlement for his original back injury when Dr. Candler did not think that McGowan was entitled to the settlement.

Following the decision to award the CNC laser cutting jobs to other individuals, McGowan initiated this suit alleging race discrimination for failing to return him to his old position and failing to award him the two CNC laser cutting positions. In support of his claims, he alleged that two similarly-situated individuals, Gary Edwards and Kirby McLaughlin, were permitted to return to positions even though they had restrictions.[2] Edwards allegedly had the same job and supervisor as McGowan and returned to work "after an injury despite not being able to lift." Aside from this information, McGowan provided no further specifics on what limitations (e.g., pushing and pulling) were placed on Edwards or whether Dr. Candler had examined Edwards and imposed any restrictions. McGowan claims that McLaughlin was allowed to work in one of the departments where a CNC laser cutting job was located even though she had a 10-pound weight restriction. McLaughlin performed the job of breaking out cut parts. Similar to Edwards, it is unclear what other restrictions McLaughlin had or whether Dr. Candler was involved in any way with her treatment or restrictions.

Deere moved for summary judgment on McGowan's claims. The district court concluded that McGowan had failed to show that similarly-situated individuals were treated more favorably and that McGowan was not quali-

---

[2] Interestingly, McGowan testified at his deposition that Edwards was not permitted to return to his old job after the injury.

fied for the positions because of the weight restrictions. In addition, the district court found that, even if McGowan were qualified for the positions, McGowan had failed to demonstrate that Deere's stated reason for not placing him in the positions was pretext. Accordingly, the district court granted Deere's motion for summary judgment.

## II. Discussion

We review a district court's summary judgment decision de novo. *Chaklos v. Stevens*, 560 F.3d 705, 710 (7th Cir. 2009). Summary judgment is proper where "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

As noted, McGowan brings his claims of discrimination pursuant to Title VII and § 1981. As this Court has observed, "[a]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996). Because McGowan has no direct evidence of race-based discrimination, he has elected to proceed under the indirect, burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for his claims. Therefore, he has to show that: (1) he is a member of a protected class; (2) he was qualified for the applicable positions; (3) he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably. *Fane v. Locke Reynolds,*

*LLP*, 480 F.3d 534, 538 (7th Cir. 2007). If McGowan can make out a *prima facie* case on these four factors, the burden of production shifts to Deere to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id.* If it can do so, the burden then shifts back to McGowan to show that the stated reason is merely a pretext for discrimination, i.e., a lie. *Id.* The pretext analysis focuses on whether the reason was honest and not whether it was accurate or wise. *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007). Notwithstanding the shifting burdens, McGowan bears the ultimate burden of persuading the trier of fact that Deere intentionally discriminated against him on the basis of his race. *Fane*, 480 F.3d at 538.

Here, the parties dispute the second and fourth prongs as well as the pretext analysis. When an employee claims that he is qualified and that the employer is lying about the reasons for an adverse employment action, the second prong and the pretext question merge. *Peirick v. IUPUI Athletics Dep't*, 510 F.3d 681, 687 (7th Cir. 2007). Therefore, we begin with the fourth prong of the *prima facie* case.

## A.  Analysis of McGowan's Proffered Comparators

McGowan has pointed to two comparators, Edwards and McLaughlin, whom he believes received more favorable treatment because they were allowed to return to work despite having weight restrictions allegedly greater

than his own resrictions.[3] To assess whether two em-
ployees are similar for purposes of the "similarly-situ-
ated" test, "a court must look at all relevant factors, the
number of which depends on the context of the case."
*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir.
2000). Thus, this test involves a flexible, common-sense
approach with requirements that vary from case to case.
*Barricks*, 481 F.3d at 560. Regardless of the context, how-
ever, the purpose of the test remains the same: to
discern whether there are sufficient common factors
between the plaintiff and another employee to allow for
a meaningful comparison in order to divine whether
discrimination was involved in an employment deci-
sion. *Id.*

The district court was critical of McGowan's evidence
on this prong because the only evidence McGowan pre-
sented was his own affidavit. McGowan argues that this
evidence is competent because it is based on his personal
knowledge. In his favor, it is true that this Court has
indicated that self-serving affidavits can be used in op-
position to motions for summary judgment provided
that they meet the usual requirements, such as being
based on personal knowledge and setting forth specific
facts showing that there is a genuine issue for trial. *See, e.g.,*

---

[3] In the district court, McGowan also listed the names of several
other employees who he alleged were allowed to return to
work following injuries, but he provided even less detail
about those individuals than he did about Edwards and
McLaughlin.

*Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004). But we need not decide if the affidavit meets this criteria because, even accepting it for summary judgment purposes, it is insufficient.

The critical areas of focus between McGowan and his comparators include the work restrictions each individual had and the duties each individual was required to perform. McGowan had an across-the-board restriction that prohibited him from lifting, pulling, or pushing more than 25 pounds. In comparison, McGowan states simply that Edwards was not able to lift. Relying solely on McGowan's statement, it is unclear what the full extent of Edwards's restrictions were. For instance, did Edwards have any restrictions related to pulling or pushing? McGowan has provided no evidence to shed light on these circumstances.

McGowan's reliance on McLaughlin is fraught with similar difficulties. He contends that McLaughlin had a 10-pound lifting restriction, which is disputed by Deere's evidence that McLaughlin actually had a 30-pound restriction. This evidentiary dispute aside, and accepting for summary judgment purposes as we must that there was a 10-pound restriction, McGowan has provided insufficient details on the full range of restrictions that McLaughlin might have had. In addition, it is not even clear that McLaughlin was required to perform the same job. Specifically, it appears that McLaughlin removed cut parts. It is unclear how this position related to the CNC laser cutting position, e.g., whether it was more or less strenuous or how the weight

bearing requirements might have been similar or different. In any event, if McLaughlin was performing a different job as the evidence suggests, he is not a similarly-situated individual in the first instance.

Moreover, McGowan's real argument is that Dr. Candler harbored some racial animus and recommended an inaccurate weight restriction that kept him from obtaining the positions that he wanted. However, he provides virtually no information on Edwards and McLaughlin regarding Dr. Candler's assessment of them (if any was performed) and how it might relate to or possibly conflict with the medical records from other medical providers.

In short, McGowan has provided insufficient details about his proffered comparators to allow a meaningful comparison. Because he is unable to demonstrate that a similarly-situated person not in the protected class was treated more favorably than he was, he cannot make out a *prima facie* case of racial discrimination.

## B.  Deere's Basis for Its Decisions

Even though our conclusion on the similarly-situated prong is sufficient by itself to uphold the district court's grant of summary judgment, we nonetheless address Deere's stated reason for its decisions, i.e., the parties' pretext arguments. It is undisputed that Deere considered McGowan unqualified for the positions he desired because of the 25-pound weight restriction imposed by Dr. Candler. McGowan goes to great lengths

to try to demonstrate that the restriction was inaccurate. He also relies on *Peirick* to argue that he need do nothing more than this in order to defeat summary judgment. In other words, he believes that his argument relieves him from having to present evidence of circumstances that suggest pretext.

As an initial matter, McGowan's argument misses the mark. The focus of our inquiry is not on whether the restriction was accurate; it is the honesty of Deere's belief in the stated reason that matters. *Barricks*, 481 F.3d at 560. Otherwise, this Court would be substituting its judgment for the employer contrary to the oft-noted fact that this Court is "not a super-personnel board charged with evaluating the general quality of employment decisions." *Brewer v. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 922 (7th Cir. 2007). Indeed, within the context of this case, McGowan's argument would lead the Court down a path of reconciling conflicting medical evidence.[4]

Further, McGowan is mistaken if he believes that he need do no more than demonstrate that the 25-pound restriction is inaccurate. Nothing in *Peirick* indicated that

---

[4] We recognize that Deere disputes whether the medical evidence is conflicting. In particular, Deere relies on Dr. Candler's affidavit which indicates that he called Dr. Lanzino and Dr. Lanzino recanted his opinion regarding a 50-pound restriction. We need not resolve the soundness of this evidence on summary judgment and will assume that there is some evidence that a 50-pound restriction might have been appropriate.

a plaintiff is relieved of the obligation of coming forward with evidence of pretext if he claims that the stated reason for an employment action is simply wrong. In other words, just because the analysis of the second prong of the *prima facie* case merges with the pretext analysis does not mean that a plaintiff does not have to present some circumstances from which intentional discrimination can be inferred. Otherwise, an honest but mistaken belief would subject an employer to liability. Thus, in order to show pretext, a plaintiff is still required to show that the employer's stated reason for an employment action is dishonest and that the true reason was based on discriminatory intent. *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007). If a plaintiff lacks direct evidence of this, he may use indirect evidence and must show that the stated reason is not credible and is factually baseless, and he ultimately must be able to point to some circumstances from which an inference can be drawn that the real reason for the employment action was discriminatory. *Id.* at 777-78. Indeed, this Court went to great lengths in *Peirick* to note the various circumstances that demonstrated that the employer's stated reason was suspect. *See Peirick*, 510 F.3d at 691-94.

Of course, we recognize the cautionary language in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-48 (2000), that circumstantial evidence probative of intentional discrimination can include proof that an employer's explanation for an employment action is unworthy of belief, and that this circumstance coupled with the *prima facie* case can permit a trier of fact to find unlawful discrimination. But *Reeves* did not

eviscerate the requirement that there must still be cir-
cumstances demonstrating the presence of intentional
discrimination, the very harm that Title VII and similar
statutes are meant to redress. Thus, contrary to McGowan's
belief, a plaintiff must do more than simply allege that
an employer's stated reasons are inaccurate; he must still
have some circumstances to support an inference that
there was an improper motivation proscribed by law.

Unlike the circumstances of *Reeves* and *Peirick*, there is
no evidence suggesting that Deere's stated reason for its
decisions is suspect and that its real motivation was
discriminatory. For one thing, there is medical evidence
to support the 25-pound restriction. McGowan had been
under a 25-pound restriction following his initial injury
in 1999, a fact with which Dr. Candler was well-ac-
quainted. Aside from Dr. Candler's opinion, Deere had
an opinion from Monson, a physical therapist, who com-
pleted an FCE with very specific weight limitations for
different activities and concluded that an across-the-
board restriction of 25 pounds on a frequent basis was
appropriate. Moreover, Dr. Cady, McGowan's treating
physician, could not find any reason to dispute the FCE.
Thus, there was a medical basis for the restriction, and
consequently Deere's stated reason was not factually
baseless.

Ultimately, McGowan has not produced any evidence
suggesting that Deere's actions were motivated by
racial animus. There simply is no evidence that Dr.
Candler was biased against McGowan because of his
race. In fact, McGowan claims that Dr. Candler is biased

against him because he was upset that McGowan received a settlement for the back injury in 1999. If this is true, it certainly would reflect negatively on Dr. Candler's professionalism, but it would not be unlawful under Title VII or § 1981. However, even if we give McGowan the benefit of the doubt that Dr. Candler *might* be racially-biased, there is nothing to show that Deere knew or should have known that Dr. Candler harbored such a bias and that it should not believe his medical opinion (particularly when there was other medical evidence to support it) when it decided not to give McGowan the positions he desired. In short, McGowan has not demonstrated that Deere intentionally discriminated against him because of his race, even if he could make out a *prima facie* case of race discrimination.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of Deere's motion for summary judgment.

9-11-09