NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2010
Decided November 8, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-1454

| | |
|---|---|
| CLEVELAND RAYFORD,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 3:08-cv-00204-JPG-PMF |
| WEXFORD HEALTH SOURCES,<br>INCORPORATED,<br>    *Defendant-Appellee.* | J. Phil Gilbert,<br>    *Judge.* |

**O R D E R**

Dr. Cleveland Rayford sued Wexford Health Sources, alleging race discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), because Wexford did not rehire him for the position he sought after being laid off during a previous downsizing. The district court granted summary judgment for Wexford because Rayford offered no evidence that Wexford's stated reason for not rehiring him was pretext for race discrimination. We affirm.

# I. BACKGROUND

Rayford, who is African American, is a medical doctor with a master's degree in health care management. Wexford is a medical services vendor providing medical treatment to inmates within the Illinois Department of Corrections ("IDOC"). Rayford joined Wexford in April 2000 as a Regional Medical Director ("RMD"), a managerial position overseeing all the IDOC facilities under Wexford's contract. In July 2005, Wexford lost its contract with the IDOC and, forced to downsize, fired several employees including Rayford. Rayford testified in his deposition that Wexford's Chief Medical Officer, Dr. Thomas Lundquist, told him that he would be rehired as an RMD if Wexford reacquired its contract in December.

Rayford called Elaine Gedman, Wexford's Vice President of Human Resources, on July 22, 2005 to discuss Wexford's loss of the IDOC contract and his severance package. Disagreement over whether Rayford disparaged Wexford during this call—Wexford's stated reason for not rehiring him—is at the heart of this lawsuit. Gedman stated in an affidavit that Rayford complained about Wexford as an institution, accused Wexford of treating him "like a dog," expressed dissatisfaction with Wexford's management team, and opined that the company taking over the IDOC contract would provide better inmate care than Wexford. In his deposition Rayford acknowledged complaining that a specific Wexford employee treated him "like a dog," but he denied making the other remarks or disparaging Wexford as an institution.

Wexford did reacquire the IDOC contract in December 2005, and Rayford called Gedman to inquire about being rehired. But Rayford no longer wanted his previous RMD position, he testified, because of the "political stuff that was going on," and instead sought the Site Medical Director (SMD) position at Pinckneyville. Gedman conferred with Lundquist about Rayford's request. In his affidavit Lundquist stated that he found Rayford unsuitable for managerial roles like RMD or SMD "based upon Dr. Rayford's derogatory comments about Wexford to Ms. Gedman" on July 22.

Gedman promptly informed Rayford that Lundquist opted not to rehire him as an SMD. Rayford recalled Gedman telling him that he "wouldn't work out in their management scheme" and that she did not think Rayford was loyal to Wexford. He testified that he interpreted these remarks as discriminatory because "she had no reason [to say that]," though he acknowledged that Gedman never mentioned his race. Gedman then offered Rayford a position as a "PRN doctor," an as-needed position with no benefits, which Rayford declined because he considered that offer "vindictive." Rayford testified that he viewed Gedman's PRN offer as discriminatory because it was below his qualifications.

Rayford appealed Lundquist's decision not to rehire him as an SMD to Wexford's CEO and President, and received a rejection from Gedman. Gedman wrote that Wexford would not rehire him in a management capacity due to the circumstances surrounding his departure and, she wrote, his "subsequent communications with Wexford." The Pinckneyville SMD position remained vacant for six months, during which time Wexford advertised the position as open. Wexford hired Dr. Timothy Mathis, a Caucasian, as acting medical director before eventually selecting Dr. Olukunle Obadina, an African American, as Pinckneyville's permanent SMD.

Rayford sued Wexford for discriminating against him because of his race when it refused to rehire him as an SMD in December 2005, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. The district court found that Rayford established a prima facie case for race discrimination, but concluded that Rayford could not show that Wexford's stated reason for not rehiring him—his disparaging the company's management on July 22 to Gedman—was pretext. Based on the evidence, the court determined, no reasonable factfinder could find that Lundquist's decision not to rehire him—even if based on a false report—was dishonest or pretext. And even if Gedman's false report influenced Lundquist's decision, the court alternatively found, Rayford did not prove that Gedman's dishonesty was due to his race.

## II. DISCUSSION

Claims of race discrimination under Title VII and § 1981 both require the plaintiff to prove the same prima facie elements. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). A plaintiff alleging race discrimination under Title VII or § 1981 may prove his case under either the direct or indirect method. *Id*. Rayford proceeds under the indirect method, so his Title VII and § 1981 claims are evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973); *see McGowan*, 581 F.3d at 579.

Under *McDonnell Douglas*, the plaintiff typically must establish a prima facie case before proceeding to the question of pretext. 411 U.S. at 802, 804; *see Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir. 1997). In this vein, Wexford argues that the district court erroneously assessed the prima facie case for discrimination under the indirect method. The district court allowed Rayford to complete his prima facie case with proof that the Pinckneyville SMD position remained open while Wexford sought other applicants. Wexford urges that the court instead should have required Rayford to show that a similarly-situated employee outside his protected class, and with a similar work history, was reinstated, *see generally Timms v. Frank*, 953 F.2d 281, 286 (7th Cir. 1992), which Wexford says Rayford cannot prove.

Wexford's argument is besides the point. At the outset, we note that a plaintiff can complete the prima facie case for race discrimination by proving *either* (1) that the position

remained open while the employer sought other applicants, *or* (2) that a similarly-situated employee outside the plaintiff's protected class, and with a similar work history, was reinstated. *See, e.g., Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). Moreover, *McDonnell Douglas* itself was a failure-to-rehire case that required the plaintiff to show that a position remained open. 411 U.S. at 802. But more importantly, once a defendant—like Wexford here—comes forward with a non-discriminatory reason for its action at the summary judgment stage, the prima facie case "simply drops out of the picture." *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 915-16 (7th Cir. 2007) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11(1993)). Because Wexford offered a legitimate, non-discriminatory reason for refusing to rehire Rayford based on his alleged disparaging remarks about Wexford to Gedman, *see, e.g., Koski v. Standex Int'l Corp.*, 307 F.3d 672, 677-78 (7th Cir. 2002), "it doesn't matter whether [Rayford] has presented a prima facie case." *Brewer*, 479 F.3d at 915.

Rayford next argues that the district court erred in finding that Wexford's reason for not rehiring him was not pretext. He contends that the court should have found that Lundquist's reason—Rayford's disparaging remarks to Gedman on July 22— covered up *Gedman*'s racial animus toward him. In Rayford's view, Lundquist was Gedman's "cat's paw"—a decision-maker who was "singularly influenced" by, and had "blind reliance" on, a subordinate. *See Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009), *cert. granted*, 130 S. Ct. 2089 (2010) (granting certiorari to decide whether a lesser degree of influence could also create a "cat's paw" relationship). Rayford notes Lundquist's acknowledgment in his affidavit that he chose not to rehire Rayford "based upon" what Gedman "advised" him of the July 22 phone call, and from this Rayford infers that Lundquist "rubber-stamped" Gedman's decision not to rehire him for the SMD position. Wexford would be liable for any discriminatory intent that Gedman possessed, *see generally Hill v. Potter*, No. 09-2815, 2010 WL 3385194, at *3 (7th Cir. Aug. 20, 2010), and the question of Gedman's intent, he asserts, should be a question for the jury.

But even if the district court had found that Lundquist was Gedman's "cat's paw," Rayford misapprehends the burden of proof he must meet to prove Gedman's discriminatory intent. A plaintiff using indirect evidence to prove discriminatory intent cannot avoid summary judgment *solely* by challenging a witness's credibility; the plaintiff must also present independent evidence to show why that witness is not credible. *See, e.g., Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a plaintiff relies on . . . summary judgment in favor of the defendant is proper."); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 814-15 (7th Cir. 2005) (a plaintiff must offer at least a "shred of affirmative evidence" to call into question the witness's credibility). Rayford states in his appellate brief that "the issue of discrimination in this case ultimately comes down to who is

more believable:  Ms. Gedman or Dr. Rayford," but he points to nothing in the record other than his own deposition to discredit Gedman as a witness.

Moreover, even if we assumed that Gedman lied, Rayford still would have to point to circumstances from which a jury could infer that her real reason for lying was discriminatory. *See generally McGowan v. Deere & Co.*, 581 F.3d 575, 581-82 (7th Cir. 2009).  Rayford relies on *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), to argue that the jury could consider Gedman's lies as ultimate proof of her discriminatory intent.  But as we explained in *McGowan*, "*Reeves* did not eviscerate the requirement that there must still be circumstances demonstrating the presence of intentional discrimination."  581 F.3d at 581.  Contrary to Rayford's assertion at oral argument, evidence of intentional discrimination is required at the summary judgment stage even when the plaintiff seeks to prove discriminatory intent through indirect evidence.  *See id.* at 579, 581.  But Rayford has not pointed to any circumstances that would permit a reasonable juror to infer that Gedman lied for a discriminatory reason, and "'discrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by . . . speculating about the defendant's motives.'"  *Springer*, 518 F.3d at 484 (citation omitted).

## III.  CONCLUSION

For the reasons stated above, the judgment in favor of the defendant is AFFIRMED.