**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2014
Decided January 9, 2015

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-1903

| | |
|---|---|
| CLEVELAND RAYFORD, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 12-cv-1132-MJR-DGW |
| | |
| WEXFORD HEALTH SOURCES, INC., | Michael J. Reagan, |
| *Defendant-Appellee.* | *Chief Judge.* |

**O R D E R**

Dr. Cleveland Rayford appeals the grant of summary judgment for his former employer Wexford Health Sources, Inc., in this Title VII suit asserting that Wexford refused to rehire him as Medical Director of Vandalia Correctional Center in retaliation for filing a previous racial discrimination lawsuit against the company. *See* 42 U.S.C. § 2000e. Rayford challenges the district court's conclusion that he did not present evidence to create a fact question about Wexford's reasons for not rehiring him. We affirm.

Rayford, who is black, had worked since 2000 as Wexford's Regional Medical Director (a manager who oversees all medical facilities falling under Wexford's contract with the Illinois Department of Corrections). *See Rayford v. Wexford Health Sources, Inc.*, 400 F. App'x 100, 101 (7th Cir. 2010). In July 2005 Wexford lost its Illinois contract to provide medical care in Illinois prisons and then had to let go the majority of its Illinois workforce, including Rayford.

According to the Senior Vice President of Human Resources and Risk Management Elaine Gedman, who at the time made Wexford's hiring decisions, Rayford called her shortly after his discharge to complain about his severance package. According to Gedman, Rayford believed that HPL (Health Professionals, Ltd.), the new medical-services contractor hired to provide medical care to Illinois inmates, would do a better job at providing inmate care than Wexford's current management team, and he told her that "management for years treated him like a dog."

A few weeks after being discharged by Wexford, HPL hired Rayford to serve (in an unspecified capacity) in Pinckneyville Correctional Center's medical unit. But five months later, after Wexford regained its contracts with the Illinois Department of Corrections, Rayford sought to return to his former job as Regional Medical Director. According to Wexford's former Chief Medical Officer, Thomas Lundquist, Wexford refused to rehire Rayford because of the derogatory comments that he made about the company to Gedman. The decision not to rehire Rayford, Gedman added, was also influenced by letters that he wrote to Illinois politicians and political organizations presenting Wexford "in a bad light."

Rayford sued Wexford, alleging racial discrimination under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e-2(a)(1). The district court granted Wexford summary judgment, and this court affirmed because there was no evidence that Gedman's reason for not rehiring Rayford was discriminatory. *See Rayford*, 400 F. App'x at 104.

While his suit proceeded against Wexford, Rayford continued working for HPL. In November 2007 HPL promoted him to Medical Director at Vandalia. But HPL lost its contract to Wexford in June 2011 and informed Rayford that it no longer needed him to serve as Medical Director.

Despite his lawsuit against Wexford, Rayford applied to retain his position at Vandalia by completing an employment form that Wexford sent to HPL employees. In Rayford's understanding, Wexford planned to keep on a majority of the former staff.

Indeed, Wexford typically retains about 97 percent of employees when transitioning from a previous prison service provider.

Gedman, who continued to head Wexford's hiring team, chose not to rehire Rayford as Vandalia's Medical Director. She doubted that Rayford would be a good member of the management team, considering his past disparaging comments about Wexford as well as the makeup of the management team, which remained intact. Cheri Laurent, another hiring-team member and Wexford's Vice President of Operations, added that she did not recommend Rayford for the position because he lacked managerial skills. The other members of the hiring team seconded Gedman and Laurent.

Although Wexford did not offer Rayford the Medical Director position, it offered him another job as an independent physician at the prison, but Rayford testified that he turned the position down. In October Wexford hired Dr. Reynal Caldwell, who is also black, as its next Medical Director at Vandalia.

Rayford brought this lawsuit in October 2012 asserting that Wexford discriminated against him because of his race; he also argued that Wexford retaliated against him—for the suit he filed against Wexford and a prior EEOC charge—by not hiring him as Vandalia's Medical Director.

The district court granted summary judgment for Wexford. Regarding Rayford's retaliation claim, the court concluded that there was no direct evidence that Rayford's EEOC charge or suit caused Wexford not to rehire him as Vandalia's Medical Director. The court also concluded that it did not need to evaluate Rayford's prima facie case because Wexford offered legitimate, nondiscriminatory reasons for not hiring him—i.e., the negative comments that Rayford made about Wexford and its management team as well as Laurent's view that Rayford did not possess effective management skills. Nor could Rayford show pretext in Caldwell's hire as Vandalia's Medical Director because there was no evidence that Rayford was comparable to Caldwell, who had not been critical of Wexford before it hired him. Finally, Rayford failed to make out a prima facie case of racial discrimination, the court concluded, because he did not refute the evidence showing that Wexford declined to rehire him for disparaging the company and lacking management skills.

On appeal Rayford challenges only the grant of summary judgment against him on his retaliation claim, and he focuses on the question of pretext. Wexford's proffered reasons are lies, he maintains, and he insists that he was not retained as Vandalia's Medical Director because he had filed an EEOC complaint and lawsuit. Pretext, he says,

can be inferred from evidence showing that he was more qualified for the position than Caldwell (based on his own track record as Regional Medical Director); that management skills are not essential for the job; and that Caldwell has represented the Wexford poorly, as when he stated during a deposition that a judge could "kiss my ass."

The district court correctly concluded that Rayford failed to produce evidence sufficient to raise a fact question about Wexford's reasons for not rehiring him. First, Rayford contends that he is more qualified than Caldwell to be Vandalia's Medical Director, but his own beliefs about his qualifications are irrelevant to the pretext analysis. *See Cardoso v. Robert Bosh Corp.*, 427 F.3d 429, 436 (7th Cir. 2005); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). Second, Rayford glosses over the significance of management skills for the position because Vandalia staff require "little if any management," but the record evidence, including the job description, reflects that the Medical Director must work with management, oversee staff, and implement company policies. Third, Rayford argues that Wexford tolerated Caldwell—who, he says, used demeaning language and represented the company poorly—just to avoid rehiring Rayford, but Caldwell made his negative comments after Wexford had already hired him. In any event, retaining Caldwell as Medical Director may have been a poor business decision, but that in and of itself is insufficient to prove pretext in refusing to rehire Rayford. *See Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 778 (7th Cir. 2013); *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 693 (7th Cir. 2006).

Finally, although Rayford argues that he can make out a prima facie case for retaliation under the indirect method of proof, he cannot identify a similarly situated individual who engaged in the same conduct and was treated more favorably than he was. *See Coleman v. Donahue*, 667 F.3d 835, 846 (7th Cir. 2012); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000). The individual Rayford identifies, Caldwell, had no record of making disparaging comments about Wexford at or before the time of hiring and thus is not similarly situated.

Accordingly, we AFFIRM the judgment.