In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3621

JOHN SOUTH,

*Plaintiff-Appellant*,

*v.*

ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03 C 3275—**Jeanne E. Scott**, *Judge*.

ARGUED APRIL 12, 2007—DECIDED JULY 27, 2007

Before RIPPLE, EVANS and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. John South filed charges of dis-
crimination with the Equal Employment Opportunity
Commission ("EEOC") against his employer, the Illinois
Environmental Protection Agency ("IEPA"); he also
testified in a colleague's discrimination case. After his
subsequent termination, he filed this action in the district
court alleging that the IEPA had retaliated against him in
violation of Title VII of the Civil Rights Act of 1964 ("Title
VII") because of his protected activities. The district court
granted the IEPA's motion for summary judgment on the

ground that Mr. South had failed to state a prima facie case of retaliation. Mr. South timely appealed this decision. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

In 1993, Mr. South began working as a chemist for the IEPA. In September 1999, and again in March 2000, Mr. South filed charges of discrimination with the Illinois Department of Human Rights and the EEOC. In these charges, Mr. South alleged that, due to his attention deficit disorder and chronic severe depression, he was a disabled individual. Mr. South also was deposed and testified in a co-worker's discrimination case in April 2000. Mr. South contends that his filing of a discrimination charge and his testimony in the fellow worker's case resulted directly in the termination of his employment.

On September 7, 2000, Mr. South sent an e-mail to his supervisor, Gary Germann, in which he stated that, effective the following day, he desired to take a medical leave of absence. In support of his request for a leave of absence, Mr. South submitted a certification from his psychiatrist, Dr. Terry Killian, that indicated that Mr. South was disabled temporarily and would not be able to work for at least two months. On the form, Dr. Killian wrote that Mr. South had been diagnosed with "MDD-R" (depression). The IEPA stated that the form submitted by Dr. Killian was incomplete and requested that the physician provide a full and complete "Physician's Statement for the Authorization for Disability Leave and Return to Work Authorization." Dr. Killian had checked the "Limitation"

box on the form but had not provided further elaboration about the nature of Mr. South's limitation; he simply had written "psychological." R.13, Ex.3 at 18. On September 8, 2000, Ann Price, Manager of the Office of Human Resources, provisionally granted Mr. South's leave under the Family and Medical Leave Act ("FMLA"), subject to his timely submission of a completed certificate from his health care provider. Dr. Killian sent updating statements on September 22, 2000, and December 20, 2000, in an attempt to describe and clarify the nature of Mr. South's disability. These statements indicated that Dr. Killian had diagnosed Mr. South with both depression and Attention Deficit Hyperactivity Disorder ("ADHD") and noted Mr. South's symptoms and the medications he had been prescribed. The December 20th physician's statement indicated that Mr. South would be medically unable to return to work for at least three months. Mr. South went on medical leave beginning September 8, 2000.

The IEPA received another updated statement from Dr. Killian in mid-March, which caused the IEPA to become concerned about Mr. South's ability to return to work. More specifically, the physician's report caused concern as to whether Mr. South would be unable to perform two of the essential functions of his job: concentrating and handling stress. Dr. Killian subsequently released Mr. South to return to work on April 16, 2001.

Following Mr. South's return to work, he received a letter from Ann Price notifying him that the IEPA requested that he submit to an independent medical evaluation as out-

lined under § 303.145(b)(6) of the State Personnel Rules.[1]
Mr. South met with two different physicians selected by
the IEPA. Both physicians requested that he sign full
medical releases; Mr. South refused to do so because he
desired to keep the non-relevant portions of his medical
records private. Price notified Mr. South that he would be
found to be insubordinate if he continued to refuse to
sign the medical releases; Mr. South nevertheless continued
to refuse. Mr. South proposed a modified medical release
agreement disclosing a smaller amount of confidential
information, but the IEPA advised him that it would not
consent to his proposed changes.

The IEPA terminated Mr. South's employment on
December 4, 2001. It based his discharge on his insubordi-
nation in refusing to consent to the disclosure of his
medical records and on his failure to perform various job
duties. Mr. South allegedly had failed to follow laboratory
standard operating procedure and likewise did not adhere
to the National Environmental Laboratory Accreditation

---

[1] 80 Ill. Admin. Code § 303.145(b)(6) of the State Personnel
Rules provides in full:

> b) In granting [a medical leave of absence] or use of sick
> leave as provided in Section 303.90, the agency shall apply
> the following standards:
>
>> 6) If the Agency has reason to believe that the employee
>> is able or unable to perform a substantial portion of
>> his/her regularly assigned duties, it may seek and rely
>> upon the decision of an impartial physician chosen by
>> agreement of the parties or in the absence of such
>> agreement upon the decision of an impartial physician
>> who is not a State employee and who is selected by
>> the State Employee's Retirement System.

Program protocols. These deficiencies involved failing to calibrate properly his instruments, indicating falsely that the proper calibration had been performed, submitting data with misidentified compounds, submitting reports with missing data, failing to verify calibrations and running samples that failed quality control criteria.

Mr. South's union grieved his termination, and he returned to the IEPA as an Environmental Protection Specialist III on April 28, 2003. As part of his return, Mr. South submitted to an independent medical examination and signed the required releases.

## B.

In ruling on the IEPA's motion for summary judgment, the district court noted that Mr. South was proceeding under the indirect method of establishing retaliation announced by this court in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 642 (7th Cir. 2002).[2]

---

[2] The district court also ruled that Mr. South had not waived his right to bring the action because he had accepted the benefits of a settlement. The district court concluded that the settlement agreement contained no waiver language, and, in fact, expressly preserved Mr. South's ability to bring a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. The district court's finding on the waiver issue has not been appealed and therefore is not before this court. Mr. South, in his complaint, requested that the district court enter a declaratory judgment stating that the IEPA had violated Title VII and issue a mandatory injunction requiring the IEPA to return Mr. South to all his prior duties and to take affirmative steps to ensure that the IEPA refrains
(continued...)

The parties agreed, according to the district court, that Mr. South had been engaged in statutorily protected activity and furthermore that he had suffered an adverse employment action when he was terminated.

The court then turned to whether Mr. South was meeting the IEPA's legitimate expectations. In the district court's view, the evidence in the record was conflicting. The record contained testimony indicating that Mr. South was not meeting expectations and had been insubordinate; it also contained, for the same period, a satisfactory employment evaluation.

The district court also discussed Mr. South's submission that he was not insubordinate because the IEPA's order that he undergo an independent medical evaluation was improper. Mr. South contended that the regulation under which he was asked to submit to a medical evaluation, 80 Ill. Admin. Code § 303.145(b)(6), allowed an independent medical evaluation *only* if the IEPA had reason to believe he was unable to perform a substantial portion of his regularly assigned duties. He urged that, because the IEPA knew he was able to perform his duties based upon his physician's statement, the order requesting him to submit to a medical evaluation was improper. The district court concluded that the evidence, viewed in the light most favorable to Mr. South, created a genuine issue of triable fact as to whether Mr. South was meeting the IEPA's legitimate expectations.

---

[2] (...continued)
from engaging in discriminatory actions. Mr. South also requested damages sufficient to compensate him for economic losses he suffered as a result of his termination, compensatory and exemplary damages and attorneys' fees.

The district court spent the bulk of its analysis discussing whether Mr. South had identified a similarly situated employee who had not engaged in protected activity and was treated more favorably than he. The court discussed in detail one of Mr. South's coworkers, Shirlene South. The court noted that, although Mr. South had presented evidence that Shirlene South was a coworker with the same supervisor and that she never had filed a charge of discrimination, he had failed to present any other evidence to establish that she was similarly situated to Mr. South. The evidence provided did not indicate the quality of her work performance, whether she had ever been disciplined, whether she had ever been on medical leave, and/or whether she had engaged in other conduct similar to the protected conduct in which Mr. South had engaged. The district court determined that the evidence of similarity was simply insufficient, and, therefore, that Mr. South had failed to state a prima facie case of retaliation. The district court thus granted the defendant's motion for summary judgment.

## II

## DISCUSSION

This case comes to us from the district court's grant of summary judgment in favor of the IEPA. We review a district court's grant of summary judgment de novo. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Id.* It is not our role to evaluate the weight of the evidence, to judge the credibility of witnesses or to determine the ultimate truth of the matter, but simply to determine whether there exists a genuine issue of

triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." *Magin*, 420 F.3d at 686 (citing Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Mr. South submits that he was a victim of unlawful retaliation; he contends that he was terminated because he had filed an employment discrimination claim with the EEOC and testified in a colleague's discrimination case. As noted by the district court, Mr. South elected to proceed under the indirect method elucidated in *Stone*. Therefore, he must show that "(1) [he] engaged in statutorily protected activity; (2) [he] performed [his] job according to [his] employer's legitimate expectations; (3) despite [his] satisfactory job performance, [he] suffered an adverse employment action; and (4) [he] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (citing *Stone*, 281 F.3d at 644). If a plaintiff meets the burden of presenting a prima facie case for retaliation, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). If the employer meets this burden, then the burden shifts back to the plaintiff to demonstrate that the established reasons for the action were in fact pretextual. *Id.* In sum, in this burden-shifting framework, the burden of production shifts temporarily to the employer if a prima facie case is established, but "the burden of persuasion rests at all times on

the plaintiff." *Haywood*, 323 F.3d at 531 (internal citations and quotation marks omitted).

The IEPA conceded that Mr. South was engaged in a statutorily protected activity[3] and that he suffered an adverse employment action. The IEPA contends, however, that Mr. South was not performing according to its legitimate expectations and that he has not been able to show that he was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. We shall focus on the latter inquiry because we concur with the district court that this issue is dispositive.

In *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007), we analyzed at length the "similarly situated" requirement.[4] *Id.* at 404. We emphasized that this requirement ought not be construed so rigidly or inflexibly that it became a useless analytical tool. We stated that the

---

[3] Title VII prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Contreras v. Suncast Corp.*, 237 F.3d 756, 764-65 (7th Cir. 2001) (citing 42 U.S.C. § 2000e-3(a)).

[4] In *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007), the plaintiff was proceeding under § 1981 and not Title VII. However, we emphasized that "we generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981." *Id.* at 403-04 (internal citations omitted). Therefore, because we apply the same methods of proof and require the same elements of the case for plaintiffs proceeding under Title VII and § 1981, *Humphries* is relevant and instructive.

similarly situated requirement "*normally* entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 404-05 (internal citations omitted) (emphasis in original). At the same time, we noted that this requirement must be a flexible one that considers "all relevant factors, the number of which depends on the context of the case." *Id.* at 405. "It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees—distinctions can always be found in particular job duties or performance histories or the nature of the alleged transgressions." *Id.* We noted explicitly that there is no requirement that a plaintiff show complete identity to a "similarly situated" employee; rather, substantial similarity will suffice. *Id.* In short, common sense must guide this inquiry. *Id.* "[T]he inquiry simply asks whether there are *sufficient commonalities on the key variables* between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation." *Id.* (emphasis added). The important question is therefore whether others similarly situated to the plaintiff, with respect to important matters characterizing the employment relationship, had been treated one way, and the plaintiff, having engaged in statutorily protected activity, was treated differently. If this is the case, a jury reasonably might draw the inference that the employer took adverse action against the plaintiff because of his protected activities. *See Crawford v. Indiana Harbor Belt R.R. Co.*, 461 F.3d 844, 845 (7th Cir. 2006).

Here, in an effort to support his retaliation claim, Mr. South merely points to other employees with the same employment responsibilities and the same supervisor. The record does not tell us, however, whether these other employees are similarly situated in any other relevant respects. Without this information, we cannot tell whether these individuals present employment characteristics that would permit a reasonable trier of fact to conclude that the IEPA had treated them differently from Mr. South. The record fails to identify specifically any coworker who was on medical leave or otherwise had an employment history that would have suggested the ordering of an independent medical examination as a precondition to continued employment.

Mr. South emphasizes that a similarly situated employee need not be identical in all respects to the complaining plaintiff. As our earlier discussion demonstrates, we do not dispute with this contention. However, Mr. South fails to demonstrate that *any* of the alleged similarly situated employees to whom he points were, in fact, similar to him with respect to the employment characteristics that are germane to this case. Before the district court, and now on appeal, Mr. South points to eight coworkers, Leslie Holt, Shirlene South, Catherine Siders, Khawaja Tayyab, David Reed, Jerome Reichle, Ricky Nimmons and Bill Jankouski. These eight individuals were employed by the IEPA in the same position as was Mr. South, Chemist II, and reported to the same supervisor. Mr. South further submits that none of those individuals were fired nor disciplined in any way; nor were any of the eight individuals ever required to submit to a health evaluation. However, Mr. South does not provide, nor does the record reveal, any other salient characteristics of these individuals

that would render them "similarly situated" to Mr. South for purposes of the retaliatory discharge analysis that the district court had to undertake.

On the record, we must conclude that Mr. South has failed to establish that similarly situated individuals who had not engaged in the protected activity in which he engaged were treated differently. Accordingly, he has failed to establish a prima facie case.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*