In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3214

AUTUMN EATON,

*Plaintiff-Appellant*,

*v.*

INDIANA DEPARTMENT OF CORRECTIONS,
PENDLETON JUVENILE CORRECTIONS FACILITY,

*Defendant-Appellee.*

Appeal from the United States District Court
For the Southern District of Indiana, Indianapolis Division.
No. 1:08-cv-01318—JMS-DML—**Jane E. Magnus-Stinson**, *Judge*.

ARGUED FEBRUARY 7, 2011—DECIDED SEPTEMBER 9, 2011

Before ROVNER and WOOD, *Circuit Judges*, and
GOTTSCHALL, *District Judge*.[*]

GOTTSCHALL, *District Judge.* Autumn Eaton sued her
employer, the Indiana Department of Corrections,

---

[*] The Honorable Joan B. Gottschall, United States District
Judge for the Northern District of Illinois, sitting by designation.

Pendleton Juvenile Corrections Facility ("DOC"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, alleging that DOC discriminated against her on the basis of gender when it terminated her employment.

The district court granted summary judgment in favor of DOC, and Eaton's appeal followed. On appeal, Eaton argues that the district court erroneously granted summary judgment to DOC because Eaton presented sufficient evidence to create a material issue of disputed fact under the *McDonnell Douglas* indirect method of proof analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

We review the district court's grant of summary judgment *de novo*. *Ellis v. DHL Express Inc. (USA)*, 633 F.3d 522, 525 (7th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must draw all reasonable inferences for Eaton, the non-moving party, and view the record in a light most favorable to her. *Ellis*, 633 F.3d at 525. Based on the record before us, we conclude that sufficient evidence exists to preclude summary judgment, and we reverse the judgment of the district court.

## I. Facts and Procedural History

Eaton worked as a correctional officer for DOC from April 2006 until March 2008. When Eaton began her employment, she was assigned to watch tour duty, which

required walking around her assigned unit to monitor the inmates. In the spring of 2007, Eaton was reassigned to work in a control room, where she monitored residents and staff via a computer. As a result, Eaton was no longer required to walk or to have any physical contact with the inmates.

In or around September 2007, Eaton received a warning for excessive absenteeism. She was told that if she did not improve her attendance, she would be moved from her current (and, in her view, more desirable) schedule, which involved alternating between one "short week" of two twelve-hour shifts and one "long week" of five twelve-hour shifts, to a schedule of five eight-hour days every week. In addition, the new schedule could require up to four hours of mandatory overtime each day; thus, Eaton theoretically could have been required to work five twelve-hour days each week under the new schedule.

At some point in late 2007, she was switched to this five-day-a-week, eight-hour-a-day schedule. She testified that the schedule shift was discipline for using too many sick days, although she also testified that she only used sick time she had accrued prior to taking the time off.[1]

Eaton never worked under the new schedule. Immediately after being reassigned, she took a month or two of

---

[1] Eaton apparently filed a grievance with DOC on September 21, 2007 as a result of this shift change, but the record does not indicate what happened with the grievance.

(presumably employer-approved)[2] leave under the Family Medical Leave Act ("FMLA"). When she returned, she was put back on the twelve-hour-a-day shifts with alternating long (five day) and short (two day) weeks. (*See* Pl.'s Designation of Evidence, Ex. D-E.) In November 2007, shortly after her return, Eaton—who suffered from a degenerative back condition—was in an automobile accident. That accident aggravated her back injury to the point where it restricted some of her work-related activities. In particular, she was given certain restrictions by her physician, but she did not immediately disclose those restrictions to DOC for fear of being returned to a five-day-a-week, eight-hour-a-day shift.[3]

In early 2008, Eaton had a "pre-deprivation hearing" for refusing overtime.[4] At this point, she disclosed her restrictions and stated that she had delayed doing so for fear of being switched to the undesirable shift. Eaton was told that she could submit her restrictions and her schedule would not be altered. She did so.

In early March 2008, Eaton used vacation time to visit her brother, who had been injured in a motorcycle acci-

---

[2] 9 C.F.R. § 825.300(d)(1) ("The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee as provided in this section.").

[3] Eaton stated that she was restricted from bending or walking excessively, lifting over ten pounds, or working more than a twelve-hour shift.

[4] The record does not make clear what a "pre-deprivation hearing" is.

dent. When she returned to work, Eaton learned that she had been removed from control room duty and reassigned to watch tour duty. Despite her request to be assigned to a different duty due to her severe back pain, Eaton was assigned watch tour duty in Unit D-11. On March 12, 2008, Eaton was assigned to watch tour duty in Unit E-16, which she called "the worst unit a correction[al] officer can work." When Eaton repeatedly refused the E-16 assignment, stating both that she physically could not do the job and that it violated her medical restrictions, her supervisor, Lieutenant Bensheimer, asked for her belt and badge. Begging to be placed in another assignment and insisting that she did not wish to quit, Eaton ultimately turned over her belt and badge and left the facility.

Immediately thereafter, Eaton called her mother, Micki Neal, who was also a correctional officer employed by DOC. Neal met with Bensheimer, and Bensheimer told Neal that Eaton could return for her next shift. Neal communicated this information to Eaton, but shortly thereafter, Bensheimer told Neal that Eaton would not be permitted to return. A gate closure order was issued so that when Eaton tried to return for her next shift, she was barred from entering the facility. Eaton never returned to work.

Eaton filed suit, alleging that DOC's actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the FMLA, 29 U.S.C. § 2601 *et seq.*, and Title VII's

gender discrimination prohibition.[5] DOC moved for summary judgment, arguing that Eaton could not establish three of the four elements of her *prima facie* case of discrimination under Title VII: first, there was no adverse action because she quit; second, she was not meeting her employer's legitimate job expectations because she refused to work in her assigned area; and third, there was no evidence that she was treated differently from employees outside the protected class who refused a work assignment. (*See* Mem. in Supp. of Mot. for Summ. J. at 16.) In support of its motion, DOC submitted only two pieces of evidence: an excerpt from Eaton's deposition and Eaton's complaint. DOC did not submit any evidence as to who made the decision to terminate Eaton's employment or any evidence of the reasons underlying any such decision. The record is silent as to both of these issues.

In her opposition, Eaton argued that she had presented sufficient evidence of gender discrimination to survive summary judgment. Under the *McDonnell Douglas* indirect method, a plaintiff must first establish a *prima facie* case by showing that "(1) she is a member of a protected class; (2) her performance met her employer's legitimate expectations; (3) despite this performance, she was subjected to an adverse employment action; and (4) her employer treated similarly situated

---

[5] Eaton explicitly abandoned her ADA and FMLA claims during summary judgment briefing, leaving only the Title VII claim at issue.

employees outside of the protected class more favorably." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006)). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007). Once the employer articulates a non-discriminatory reason for its action, the burden shifts back to the plaintiff to present evidence showing that the employer's purported reason was pretextual. *Id.*

Eaton argued that she had met DOC's expectations and had been subject to an adverse employment action. She identified male correctional officers whom she contended were similarly situated and had been treated more favorably. In particular, she identified Dennis Curtis, the male comparator at issue here. Eaton also argued that DOC's purported legitimate reason for her termination (that she quit) was pretextual. In support, Eaton submitted affidavits from herself, Micki Neal, and Dennis Curtis; portions of her deposition testimony; and a few employment-related documents, such as letters of commendation she had received.

In reply, DOC asserted that Curtis was not similarly situated, both because his refusal of a DOC assignment was distinguishable from Eaton's refusal and because his prior disciplinary record differed from Eaton's. DOC further argued that even if Eaton had demonstrated a *prima facie* case of discrimination, DOC had a legitimate,

non-discriminatory reason for terminating Eaton's employment: Eaton "refused to do her assigned work and quit." (Def.'s Reply in Supp. of Mot. for Summ. J. at 7.)[6] In addition, DOC argued that Eaton had no evidence establishing pretext.

The district court granted DOC's summary judgment motion, ruling that Eaton had failed to establish a *prima facie* case of gender discrimination under the indirect method of proof.[7]  *See Eaton v. Indiana Dep't of Corr.*, No. 08-cv-01318, 2010 WL 3526266 (S.D. Ind. Sept. 3, 2010). Assuming without deciding that Eaton had suffered an adverse employment action and that she had met DOC's legitimate expectations, the district court found that Eaton's asserted male comparators were not similarly situated. *See Eaton*, No. 08-cv-01318, 2010 WL 3526266, at *4-6.

On appeal, Eaton argues that the district court erred in granting summary judgment. Eaton again argues that she established a *prima facie* case because she was meeting DOC's legitimate job expectations, she suffered an adverse employment action, and Curtis was a

---

[6] DOC drove this point home a number of times. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 17 ("[T]here is no evidence establishing pretext. Eaton quit. There is no evidence of any 'phony reason' for Eaton's termination (which was not even a termination).")

[7] The district court also ruled that Eaton failed to set forth a *prima facie* case under the *McDonnell Douglas* direct method of proof; Eaton does not challenge this finding on appeal.

similarly situated male comparator whom DOC treated more favorably. DOC concedes that genuine issues of material fact preclude summary judgment on the issues of whether Eaton suffered an adverse employment action and whether she met DOC's legitimate job expectations. DOC argues only that Eaton failed to establish a *prima facie* case because Curtis was not similarly situated. (*See* Br. of Appellee at 10.)

As noted above, in DOC's motion for summary judgment it argued that Eaton "refused to do her assigned work and quit." DOC now argues for the first time on appeal that it fired Eaton based on her disciplinary history and her refusal of an assignment, and further claims that differences between Eaton's and Curtis's disciplinary history prevent Curtis from being an appropriate comparator. However, with the exception of Bensheimer telling Neal that Eaton could not return to work and the gate closure order, nothing in the record indicates that DOC ever made a decision to terminate Eaton's employment—there is no evidence as to when that decision was made, who made the decision, or why.

## II. ANALYSIS

Title VII prohibits an employer from terminating an employee because of the employee's gender. *See* 42 U.S.C. § 2000e-2(a)(1). Under the *McDonnell Douglas* indirect test, a plaintiff must satisfy four requirements to establish a *prima facie* case of gender discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Eaton has satisfied the first three requirements because DOC admits (and

the record supports) that Eaton is a member of a protected class and that there are genuine issues of material fact as to whether Eaton met DOC's legitimate expectations and whether she suffered an adverse employment action. Therefore, the issue before this court is whether Eaton presented sufficient evidence to allow a reasonable factfinder to find that a similarly situated male employee, Dennis Curtis, received more favorable treatment than Eaton. Based on the record before us, we find that a reasonable factfinder could conclude that Eaton and Curtis were similarly situated, and that therefore Eaton established her *prima facie* case. Although the parties argue the issue of pretext, the district court did not decide that issue, and the record below—containing no evidence of who made the decision to terminate Eaton or why—does not permit the issue of pretext to be resolved by this court.

A.  *A Reasonable Factfinder Could Conclude that a Similarly Situated Male Employee Received More Favorable Treatment than Eaton.*

The similarly situated analysis requires a context-based examination of all relevant factors. *South*, 495 F.3d at 752-53 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007) (holding that the plaintiff failed to show that comparators with the same employment responsibilities and the same supervisor were similarly situated, as the plaintiff failed to show they had similar employment history or had otherwise engaged in similar conduct)). It "ought not be construed so rigidly or inflexibly

that it [becomes] a useless analytical tool." *Id.* at 752. Nevertheless, "the comparators must be similar enough that any differences in their treatment cannot be attributed to other variables." *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 742 (7th Cir. 2011). This generally requires the plaintiff to show that the comparator had the same supervisor, was subject to the same employment standards, and had engaged in conduct similar to that of the plaintiff. *See South*, 495 F.3d at 752. Because the similarly situated analysis does not require numerosity, the plaintiff need offer evidence as to only one similarly situated comparator. *Humphries*, 474 F.3d at 406-07. Overall, "the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* at 405.

Here, the district court rejected Curtis as a similarly situated comparator based on differences between Eaton's and Curtis's conduct in refusing an assignment and differences between Eaton's and Curtis's disciplinary history. We address both findings in turn.

### 1. *Refusal of a Work Assignment*

Eaton refused a work assignment on March 12, 2008, when she was assigned to watch tour duty in Unit E-16. Eaton, accompanied by Neal, spoke to Lieutenant Bensheimer prior to her assignment regarding her desire not to work in that unit. Eaton requested a different unit

assignment, telling Bensheimer that she could not work in Unit E-16 due to her physical limitations and medical restrictions. Although Neal offered to swap assignments with Eaton, Bensheimer denied Eaton's request to switch assignments.

At some point, Neal left while Eaton and Bensheimer continued to talk. When Eaton continued to refuse her new assignment, Bensheimer asked for her belt and badge. Eaton responded by saying that she did not want to quit. When Bensheimer told her that she had to work in Unit E-16 or turn in her belt and badge, Eaton gave the items to Bensheimer and left the facility. Shortly thereafter, Eaton called Neal and told her that Bensheimer had taken her belt and badge. Neal spoke with Bensheimer, who told her that, because Eaton was so upset, Eaton should go home and return on her next scheduled workday. Neal told Eaton about this conversation, but several hours later, Bensheimer told Neal that Eaton would not be allowed to return to DOC. When Neal informed Eaton of this development, Eaton immediately called to speak to Bensheimer, but was unable to contact him. When Eaton attempted to return for her next scheduled shift, she was informed that a gate closure order denied her entrance to the facility.

Curtis was employed at DOC as a correctional officer from December 2006 through September 2007. While under the supervision of Bensheimer, Curtis reported to work and refused an assignment to a new unit. When Bensheimer insisted that Curtis work the new assignment, Curtis became angry, told Bensheimer that he quit, and left the facility. Curtis returned to work about

forty-five minutes later, and Bensheimer permitted him to return to his preferred assignment without any discipline.

The district court's determination that Eaton's and Curtis's conduct in refusing a work assignment was too dissimilar to provide a basis for comparison was based on three factors: (1) unlike Curtis, Eaton never actually quit, but simply left the facility, (2) Curtis did not turn in his belt or badge when he left, whereas Eaton did, and (3) Curtis returned to work less than an hour later and resumed working, whereas Eaton only attempted to return at the start of her next shift.[8] *See Eaton*, No. 08-cv-01318, 2010 WL 3526266, at *5.

In our view, the conduct of Eaton and Curtis in refusing an assignment is sufficiently similar to allow a jury to decide whether their disparate treatment was based on gender discrimination. While their situations are not identical, we cannot say that, as a matter of law, Eaton's conduct was more blameworthy than Curtis's. If anything, Eaton's conduct could be viewed as less deserving of termination, as she made clear that she did not want to quit and it is undisputed in this record that she refused the new assignment based on her physical limitations and medical restrictions.

This court's decision in *Humphries* is instructive. In *Humphries*, the plaintiff sued his employer, Cracker

---

[8] Eaton did so at Bensheimer's instruction: he specifically told Neal that Eaton should go home and to return on her next scheduled workday.

Barrel, alleging racial discrimination and retaliation after Cracker Barrel fired him for allegedly leaving the store safe unlocked at night. 474 F.3d at 389-90. The plaintiff had offered evidence of a similarly situated comparator who held the same position with the same duties, supervisor, and ultimate decisionmaker, and who had a similar employment performance history. *Id.* at 406. But while the plaintiff had been fired for leaving a safe unlocked at night, his putative comparator left a safe open during the day and was not fired.

Although we agreed that a distinction existed between leaving a safe unlocked at night and leaving a safe unlocked during the day, we concluded that this was "a distinction without much difference." *Id.* Both employees had violated Cracker Barrel policy that the safe could not be left unlocked and unattended at any point during the twenty-four hour day. The issue was "whether there [were] sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." 474 F.3d at 405. After undertaking a "flexible," "common-sense" inquiry, we found that the putative comparator was similarly situated, because there were enough similarities between the two employees to "isolate the critical independent variable: complaints about discrimination." *Id.* at 405-06.

Thus, summary judgment is appropriate only where it is clear that no reasonable jury could find that the

similarly situated requirement has been satisfied. *See Lunini v. Grayeb*, 395 F.3d 761, 770 n.6 (7th Cir. 2005) (citing *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); *Bell v. Duperrault*, 367 F.3d 703, 709-10 (7th Cir. 2004); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th Cir. 2002); and *Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001)). In general, "whether individuals are similarly situated is a factual question for the jury." *Id.*

Eaton's refusal of a work assignment was similar enough to Curtis's refusal that a reasonable factfinder could determine that they were similarly situated. As in *Humphries*, Eaton was not required to show that Curtis's refusal to work was *identical* to hers. *See Humphries,* 474 F.3d at 406. Eaton and Curtis both refused a work assignment from the same supervisor and left the facility. Both returned to work or attempted to return to work promptly or when instructed to do so by their supervisor. And as noted, Eaton's behavior reasonably could be viewed as less culpable than Curtis's. Under the flexible, common-sense standard described in *Humphries*, there is more than enough similarity on this point to allow the matter to proceed to a jury.

### 2. Disciplinary History

In addition to the refusal of a work assignment, the district court found that Curtis was not similarly situated because his disciplinary history was not comparable to Eaton's: Eaton had been disciplined for excessive

absenteeism and reprimanded for failing to attend a mandatory training session, whereas Curtis had been disciplined for refusing to work overtime and for disobeying a direct order to turn off a television set while inmates were being disciplined.[9] (*See* Aff. of Dennis Curtis, Pl.'s Designation of Evidence, Ex. B.)

DOC relies on *Amrhein v. Health Care Services Corp.*, 546 F.3d 854 (7th Cir. 2008), to support its argument that Curtis cannot be considered similarly situated to Eaton because he did not have a similar disciplinary history. In *Amrhein*, while noting that a similarly situated employee "need not be 'identical,'" we rejected a potential comparator who had the same supervisor and was subject to the same standards as the plaintiff because there was no evidence that the comparator had additional conduct violations. *Amrhein*, 546 F.3d at 860. Indeed, the plaintiff had provided minimal evidence that any of the putative comparators had a similar disciplinary history. *Id.* at 858-60. "Without a similar disciplinary history, [the comparator] cannot be considered 'similarly situated.'" *Id.* at 860.

---

[9]  DOC's recitation of Eaton's disciplinary history is based on Eaton's deposition testimony. Because Eaton's deposition testimony about her discipline at DOC is often vague and at times inconsistent, the details of her official disciplinary history at DOC are nearly incomprehensible. Further complicating the issue, although documents from DOC's records of Eaton's disciplinary history are referenced on numerous occasions in her deposition, these documents were not included in the record in the district court.

*Amrhein*, however, did not address the issue presented in this case: whether distinctions in disciplinary history render two individuals non-comparable when there is no evidence that the employer actually considered disciplinary history in making its termination decision. Here—where DOC repeatedly took the position in the district court that the only basis for the decision to terminate Eaton's employment was that she quit—not only does the evidence fail to indicate that disciplinary history was considered, but the record makes clear that disciplinary history played no role in DOC's decision to terminate Eaton's employment (if it even did "decide" to terminate her employment). These arguments—that Eaton's disciplinary history was a factor in her termination, that this disciplinary history was a legitimate reason for her discharge, and that this disciplinary history distinguished her from Curtis—were made for the first time in DOC's reply brief in support of its motion for summary judgment, and even then, only in the context of whether DOC's reasons for terminating Eaton's employment were pretextual. Neither DOC's motion for summary judgment nor the district court's decision cited evidence indicating that Eaton's disciplinary history played any role in any decision to terminate her employment.

It is routinely stated that similarly situated employees must be "directly comparable to the plaintiff in all material respects, which includes showing that the co-workers engaged in comparable rule or policy violations." *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (quoting *Patterson v. Indiana News-*

*papers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009)). Our cases have further refined the inquiry: "all material respects" means comparable experience, education and qualifications, "*provided that the employer took these factors into account* when making the personnel decision in question." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (emphasis added); *see Hull v. Stoughton Trailers, LLC,* 445 F.3d 949, 952 (7th Cir. 2006) (same); *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (same); *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003) (same). A characteristic that distinguishes two employees, regardless of its significance when objectively considered, does not render the employees non-comparable if the employer never considered that characteristic. The purpose of the similarly situated requirement is to provide a basis for a judgment about the fairness of the employer's decision. Factors never considered by the employer cannot provide any insight as to whether the employer's decision was motivated by discriminatory intent.

Here, the record provides no indication that DOC considered Eaton's disciplinary history in deciding to terminate her employment. Because the record contains no such evidence, there is no basis for believing that Eaton's disciplinary history was more serious than Curtis's or that DOC so considered it. On this record, it was error for the district court to conclude that Eaton and Curtis were not similarly situated based on their disciplinary history.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of DOC's motion for summary judgment on Eaton's Title VII claim, and REMAND for proceedings consistent with this opinion.